**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No.: 1:22-cv-22705**
**[CONSENT]**

CYNTHIA TRAN, individually and
on behalf of those similarly situated,

      Plaintiffs,                                  **JURY TRIAL DEMANDED**

v.

AMAT VICTORIA CURAM ENTERPRISE LLC,
individually and d/b/a MAD WYNWOOD, and
ANDRES SAN MARTIN and JOEY VEGA, Individually,

      Defendants.

_____/

## COLLECTIVE ACTION COMPLAINT

1.      Plaintiff CYNTHIA TRAN, individually, and on behalf of those similarly situated, brings this collective action, by her counsel, Brett D. Kaplan, P.A., against AMAT VICTORIA CURAM ENTERPRISE LLC d/b/a MAD WYNWOOD, and JOEY VEGAS to recover unpaid wages, withheld tips, bonuses, and/or commissions, lost wages, liquidated damages, the costs and reasonable attorney's fees of this action, as applicable, pursuant to the Fair Labor Standards Act of 1938 ("FLSA") 29 U.S.C. §§ 201, et seq. and the Florida Minimum Wage Act ("FMWA") Fla. Stat. 448.110.

2.      Plaintiff Tran was employed by MAD WYNWOOD, a nightclub, as a bottle server, alongside about a dozen other servers from November 12, 2021 to December 3, 2021.

3.      In an article published on December 8, 2021, Joey Vega, MAD's "Co-Owner" and "Chief Operating Officer," said of his club's honeycomb theme, "When you think of a bee, you think of a queen bee. The queen tells the workers what do to and how to do it. It's the same here.

She's in control. That's what it symbolizes, because when you're here, you fit into the lifestyle, and that's the Mad lifestyle."

4.     From November of 2021 to the present, Defendant failed to pay Plaintiff and other similarly situated servers minimum wages, unlawfully kept tips, bonuses, and commissions, failed to maintain payroll records, never provided notice of whether Plaintiff Tran was subject to a tip pool, or whether Defendant took a tip credit.

5.     Defendant terminated Plaintiff Tran's employment in retaliation for complaining of numerous wage violations, including complaining that Defendant had not been maintaining records of Plaintiff's actual hours worked, did not pay Tran wages for all hours worked, improperly withheld tips, and after numerous inquires as to whether she was subject to a tip pool.

6.     Plaintiff and the Collective seek to recover damages including the sum of all unpaid wages, the sum of all improperly kept tips, and damages in an amount equal to the sum of all unpaid wages and kept tips as liquidated damages.

## JURISDICTION AND VENUE

7.     The Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331 (federal question), and 29 U.S.C. § 216(b).

8.     Venue is proper in the Southern District of Florida under 28 U.S.C. § 1391(b)(2) because a substantial portion of the acts or omissions giving rise to this action occurred within the Southern District of Florida.

## PARTIES

9.     Plaintiff Cynthia Tran is an individual, and a resident of Florida.  Tran began working for Defendants on November 12, 2021 to December 3, 2021.

10.     Plaintiff is expressly authorized to bring this action behalf of herself and similarly situated employees pursuant to 29 U.S.C. § 216(b).

11.     Plaintiff is an "eligible employee" pursuant to 29 U.S.C. § 203(3)(1), because Plaintiff was employed by Defendants as a "server" at MAD.

12.     AMAT VICTORIA CURAM ENTERPRISE LLC is a Florida Limited Liability Company, with a principal address at 2901 NE 1st Ave., APT 2209, Miami, Florida 33137.  MAD Club is an entity, located at 55 NW 24 St., Miami, Florida 33137.

13.     Defendant MAD is a "covered employer" within the meaning of the FLSA, 29 U.S.C. § 203(d), and the FMWA, Fla. Stat. § 448.1010(3) because, pursuant to 29 U.S.C. § 203(r)(1), with an annual dollar business volume in excess of $500,000.

14.     MAD is a boutique luxurious nightclub in Wynwood, Florida.

15.     Defendant JOEY VEGA ("Vega") is a co-owner and Chief Operations Officer of MAD.

16.     Defendant Vega is an "employer" within the meaning of the FLSA because, pursuant to 29 U.S.C. § 203(d), Vega is a "person who acts, directly or indirectly, in the interest of an employer in relation to an employee."

17.     Vega has operational control over the conditions of MAD servers' employment through day-to-day involvement, holding direct supervisory authority over Tran and other servers, made decisions related to wages, held power to hire and fire employees, oversees the hours and schedules of the servers, and direct communication with Plaintiff and other MAD servers.

18.     Defendant ANDRES SAN MARTIN ("Martin") is an owner and creative director of MAD.

19.    Defendant Martin is an "employer" within the meaning of the FLSA because, pursuant to 29 U.S.C. § 203(d), Martin, as co-owner, is a "person who acts, directly or indirectly, in the interest of an employer in relation to an employee."

20.    Martin has operational control over the conditions of MAD servers' employment through day-to-day involvement, holding direct supervisory authority over Tran and other servers, made decisions related to wages, held power to hire and fire employees, oversees the hours and schedules of the servers, and direct communication with Plaintiff and other MAD servers.

### PREREQUISITE NOTICE UNDER FLA. STAT. 448.110(6)

21.    On January 25, 2022, Plaintiff filed a notice of claims to Defendant pursuant to Fa. Stat. § 448.110(6)(a), notice claims for violations of the Florida Minimum Wage Act (FMWA) based on the facts alleged herein.

22.    Plaintiff mailed a letter to Owner of AMAT VICTORIA CURAM ENTERPRISE LLC, Andres San Martin with notice that Plaintiff was owed minimum wages, estimated the work dates and hours for which Plaintiff Tran seeks payment, and the total amount of unpaid wages through the date of the notice.

23.    Plaintiffs' FMWA claims are timely under Fla. Stat. § 448.110(6)(b) because Defendants rejected the claim and/or otherwise failed to respond to the Notice within 15 calendar days of receipt of same.

### FACTUAL ALLEGATIONS

24.    Plaintiff Cynthia Tran is a 28-year-old woman.

25.    Between November 12, 2021 and December 3, 2021, Plaintiff worked for Defendant as a non-exempt hourly server and Plaintiff's primary duties consisted of: interacting

with guests, recommending and selling alcoholic drinks and bottle services provided by MAD in a nightclub setting in Wynwood.

26.     MAD has employed two (2) or more employees who have regularly sold, handled or otherwise worked on goods and/or materials that have been moved in produced for service. Plaintiff has regularly processed electronic bank and credit card transactions for payments by and for Defendant' customers through banks and merchant services for major credit card companies.

27.     The annual gross sales of MAD has been in excess of $500,000.00 per annum, including in 2021, and 2022.

28.     MAD has been an enterprise engaged in interstate commerce or in the production of goods for commerce as defined by FLSA, U.S.C. §203(s).

### MAD Retains Keeps Tips From Servers & Fails to Pay Wages For All Hours Worked

29.     Brian Diaz ("Diaz"), the General Manager of MAD, interviewed and hired Plaintiff on or about November 12, 2021, as a "server," on an hourly basis at $10 per hour, plus tips and 10% commissions on patrons who purchase bottle service.

30.     Diaz interviewed Tran that morning, hired her, and assigned her to begin working that evening, from about 8 PM to 6 AM.  Tran's job duties as a server included recommending and selling drinks to guests in MAD's nightclub setting.

31.     Although different managers told Tran different things, Tran was scheduled to earn $10 per hour, plus tips and commissions for booking tables at MAD.

32.     Plaintiff Tran worked on the following dates in November of 2021: November 12 (8 p.m. to 5 a.m.), November 19, (9 p.m. to 6 a.m.); November 20, (10 p.m. to 6 a.m.); November 25, (10 p.m. to 6 a.m.); November 26, (10 p.m. to 6 a.m); and November 27 (10 p.m. to 6 a.m.).

33.    Tran received two checks: (1) November 26, 2021, for the period of November 15, 2021 to November 21, 2021; and (2) December 3, 2021, for the period of November 22 to November 28, 2021. The first check, shown below, indicates that Tran was paid an hourly wage for only 9 hours during the November 15-21 pay period.  However, Tran worked on November 19 and November 20, for about 17 total hours, which Defendants paid Tran zero compensation, let alone the minimum wage.

34.    Defendants failed to maintain records of Plaintiff and similarly situated servers' shifts, including their actual start and stop times, total hours worked per day, weekly, or biweekly, for each week during Plaintiff's employment and for other similarly situated servers from November of 2021 to present.



35.    The paystub above shows Plaintiff earned $725.64 for "this period," but does not include a rate of pay and indicates "0.00" for hours worked.

36.    On or about November 26, 2021, Plaintiff Tran complained to Daniela Reyes, ("Reyes"), the accountant for MAD, that she was unpaid proper wages.  Reyes told Tran the 9.36

hours, or $93.60 paid above were for her training on the first day of Tran's employment, which occurred on November 12, 2021, outside the pay period of November 15-21.



37.    Hence, MAD did not pay Plaintiff a wage at all on every day of her employment except the first day which indicates "9.36 hours," and fell outside of the pay period of the first check. Tran told Reyes, "It says 9 hours on there," but explained that she "served the 12, 19, and 20," which was more than 9 hours. Indeed, Plaintiff estimates that to be at least 27 hours for November 12, 19, and 20, 2021.

38.    On November 12, 2021, Plaintiff Tran earned about $800 in tips on her first day at MAD.  However, Defendant only paid Plaintiff "$93 for "training," and zero dollars for the $800 in tips she earned.

39.    Reyes told Plaintiff the "rest is for the other 2 days"—meaning, $725.64, shown above—presumably, November 19-20.  However, the paystub does not indicate any hours, and does not indicate manner whether the $725.64 was for Plaintiff's hourly wages, earned tips, or any combination of same.

40.     Defendants failed to pay Plaintiff the minimum wage required law for Plaintiff's hours worked, and likewise, the other similarly situated employees, including other servers.

41.     By MAD's own admission, MAD did not pay Plaintiff Tran any wage, let alone a minimum wage for any day of work other than her first day.  Likewise, MAD admits that it did not pay Plaintiff Tran any of the tips she earned on her first, day, but just a minimum wage—the only day MAD paid Plaintiff a wage.

42.     On or about November 26, 2022, Plaintiff Tran messaged Reyes, asserting that she was unpaid wages and that she was missing her tips.

43.     On or about November 26, 2021, Plaintiff Tran messaged Meruvia and explained her good faith belief that her hours were not recorded properly.   For instance, Tran stated, the paystub "must be incorrect because it … doesn't even have my hours on there."

44.     Tran's second paystub, received on December 3, 2021, did not include payment for any hours worked for the pay period of November 22, 2021 to November 26, 2021.  Yet, Plaintiff worked form about 10 pm to 6 am on November 25, 26, and 27—none of which is reflected on her paystub below.

45.     Likewise, the paystub does not indicate a rate of pay or the amount of hours worked.



46.     Plaintiff estimates that she is owed approximately $410 in unpaid minimum wages, based on the following:

- 41 hours of unpaid wages based on five (5) days of unpaid minimum wages.

- On November 19 Plaintiff worked from 9:00 P.M. to 6 A.M.; 9 hours

- On November 20, 25, 26, and 27, Plaintiff worked approximately 10:00 P.M. to 6 A.M.; 8 hours each shift.

- 41 total hours of unpaid minimum wages: 41 x $10 = $410.

47.     Based on Defendants' failure to accurately maintain pay records, however, Plaintiff Tran and all similarly situated individuals cannot limit the amount of damages she is owed because she has not seen all or any of the pay records in Defendant' possession.

**Defendant Withholds Tips, Fails to Track Hours, and Provides Inconsistent Answers to Whether Defendant Took Tip Credit**

48.     In addition to unpaid minimum wages for 41 hours of Plaintiff Trans' employment, Defendants also withheld an estimated $800 in tips per night, for six nights, over the course of Plaintiff's employment.

49.     Plaintiff's $4,800 estimation on tips withheld by Defendant is based on the following:

- 6 days of employment
- Approximately $800 in tips per night.
- $800 x 6 = $4,800.

50.     Plaintiff will seek liquidated damages in an amount double of the above $4,800 for withheld tips.

51.     Defendants gave inconsistent answers to Plaintiff and other servers regarding the compensation they were entitled to with respect to their wages, tips, and commissions.

52.     For instance, both Meruvia and Vega told Tran on at least four separate occasions that servers keep 100% of their tips.  Yet, other servers told Tran that servers pool their tips.

53.     Defendants did not pay Plaintiff 100% of her tips.  Likewise, Defendant unlawfully retained tips that belonged to Plaintiff and similarly situated coworkers.

54.     Defendants required Plaintiff and other servers to share tips with non-tipped employees who were bussers or hostesses.  Defendant required other servers to perform other tasks like hosting, and other duties unrelated to servers, for which did not earn tips, including Plaint Tran's co-worker, Natalie.

55.     Defendants never informed Tran of the tip pooling system, or otherwise explained the pool to the extent one existed, and likewise never explained whether MAD took a tip credit.

56.     Defendants failed to inform Plaintiff and the Collective whether the servers pooled tips and never provided sufficient notice to indicate a policy with respect to the tip pool to the extent such pool existed.

57.     Plaintiff then lodged her unpaid wages claims to George Meruvia.  Meruvia is MAD'S "General Manager" and has operational control over the conditions of MAD servers' employment through day-to-day involvement, holding direct supervisory authority over Tran and other servers, making decisions related to wages, held power to hire and fire employees, oversees the hours and schedules of the servers, and had direct communication with Plaintiff and other MAD servers from November of 2021 to the present.



58.     Plaintiff showed Meruvia receipts of tips she never received tips for.  Plaintiff Tran also complained that her paycheck was inaccurate because it only had $800 on it, did not track her hours, and in no way accounted for other commissions Tran was to receive for booking tables.

59.     Meruvia made zero effort to address Plaintiff Tran's unpaid wages claims and withheld tips, and in fact continuously failed to address Tran's concerns.

60.     Indeed, rather than address the repeated unpaid wage and withheld tips and innacurate recordkeeping concerns reported by Plaintiff Tran, Meruvia made excuse after excuse like, "I'm in a meeting … as soon as I'm done I will call," and then never responded, even when, Plaintiff Tran asked if he was still in the meeting two-and-a-half hours later.  Meruvia made further excuses that, "We have a huge week ahead."

61.     Plaintiff complained that her paychecks because it "doesn't have my hours on there."

62.     Tran complained to Meruvia that her paystubs did not track any of her hours aside from the first day. Plaintiff Tran also showed a receipt showing a $465 tip from one table.

63.     On or about November 28, 2021, Tran messaged "Bottle servers Mad," a group chat maintained by Meruvia and including H.R./payroll specialists and all the servers.

64.     Tran said, "Do we keep the over tips that we get on the [credit card] because [Joey Vega, Owner] told me it goes to us, but the girls are saying that we pool [credit card] over tips?"

65.     Defendant, including its agents, Meruvia, and H.R./payroll personnel simply ignored Plaintiff Tran's inquiry about a tip pool.



66.     On or about December 3, 2021, Meruvia terminated Tran's employment after and because she complained about unpaid wages and Defendant' failure to maintain accurate records.

67.     Meruvia explained that the termination was an order from the "higherups," which, upon information and belief, is Vega and/or Martin, who likewise was aware of Tran's complaints of unpaid wages and withheld tips because of Plaintiff Trans' messages to the group chat..

68.     Tran has suffered damages as a result of Defendant' violations of wage and hour laws and for terminating Plaintiff in retaliation for complaining of unpaid wages.

69.     Plaintiff has suffered lost wages for losing her job where she could earn upwards of $800 in tips per night alone.

## COLLECTIVE ACTION ALLEGATIONS

70.     Plaintiff Tran brings this action individually and on behalf of all other individuals similarly situated pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b). Plaintiff and the similarly situated individuals were employed by Defendant as nonexempt servers.

71.     The proposed collective is defined as follows: All persons who worked for Defendants as servers or in other positions with similar job titles and/or duties at any time within three years prior to the commencement of this action ("Collective"), and who were not paid all wages earned for hours worked, tips were withheld, or whose commissions were withheld.

72.     Plaintiff estimates the size of the Collective to be at least 25 servers who have been employed by Defendants from November of 2021 to the present. The precise size of the Collective can be ascertained from records of the Defendant.

73.     Defendants failed to pay Plaintiff and the Collective all wages earned for all hours worked from November of 2021 to the present.

74.     Defendants' conduct in failing to pay Plaintiffs all wages earned for hours worked was willful and in bad faith.

75.     Defendants' failure to pay Plaintiff and the Collective members for all hours worked results from generally applicable policies and practices of Defendant and does not depend on the personal circumstances of individual Plaintiff or Collective members.

76.     Plaintiff and the Collective seek a sum of the amount of wages for every hour of work Defendants paid no wage plus damages in an equal amount in liquidated damages.

77.     Plaintiff and the Collective seek a sum of the tips kept by Defendant for all servers employed by Defendants from November of 2021 to the present plus damages in an equal amount in liquidated damages.

78.     Defendants' conduct was widespread, repetitious, and consistent, and various servers in addition to Plaintiff Tran share similar experiences.

79.     Defendants never provided notice to Plaintiff or the Collective of any required tip pool contribution amount.  Indeed, Plaintiff had to inquiry whether she was she was contributing her tips to a tip pool because Defendants never provided notice as required by the FLSA. Defendants violated the FLSA by taking a tip credit without providing notice to Plaintiff and the Collective.

80.     While Defendants apparently informed some of the servers that there was a tip credit, Defendants informed other servers that there was not a tip credit.

81.     Defendants retained tips that belonged to Plaintiff and the Collective in violation of the FLSA.

82.     Defendants are liable, jointly and severally, to Plaintiff and the Collective an amount equal to the unlawfully retained tips and an equal amount in liquidated damages.

83.     Defendants are also liable to Plaintiff and the Collective for the amount of any tip credit taken.

14

84.     As a result of Defendants' unlawful conduct, the Plaintiffs and those similarly situated have incurred loss of compensation in an amount to be determined at trial, along with liquidated damages, attorney's fees, and costs of litigation.

## COLLECTIVE CAUSES OF ACTION

### COUNT I
### FLSA, 29 U.S.C. § 206(a)(1)(C)
### Minimum Wage Violation
### (Plaintiffs against Defendants)

85.     Plaintiffs reincorporate the allegations in paragraphs 63-72.

86.     Defendants employed Plaintiff and the Collective as non-exempt "servers." Plaintiff was employed by Defendant within the meaning of 29 U.S.C. § 203(e)(1).

87.     Defendants willfully violated the FLSA by failing to compensate Plaintiff and all Collective members under the federal minimum wage, because MAD failed to pay Tran Collective members wages for all hours worked during their employment.

88.     During workweeks between November of 2021 and the present, Defendants failed to pay Plaintiff and those similarly situated any wages for some hours worked in certain workweeks.

89.     Plaintiff and the Collective will seek reasonable attorney's fees to be paid by Defendants, and costs of this action.

90.     As a result of Defendants' unlawful conduct, the Plaintiffs and those similarly situated have incurred loss of compensation in an amount to be determined at trial, along with liquidated damages, attorney's fees, and costs of litigation.

91.     By failing to pay the Plaintiffs and those similarly situated all of their earned wages at their established wage rates during workweeks between November of 2021 and the present, Defendants violated the FLSA.

92.     Plaintiff Tran, like similarly situated employees was employed by MAD, an entity engaged in commerce.

93.     MAD was an employer within the meaning of the FLSA because Defendant employed more than two employees affecting interstate commerce during November and December of 2021.  Likewise, MAD had an annual gross revenue in excess of $500,000 in 2021 and 2022.

94.     Plaintiff and the other servers are entitled to the minimum wage required under law for every hour worked for Defendant for each week of their respective employment.

95.     Defendant failed to pay Plaintiff and those similarly situated at least the minimum wage—or any wage—for each hour Plaintiffs worked for Defendant.

96.     All similarly situated non-exempt servers are likewise entitled to be paid the minimum wage required under law for each hour they worked for Defendant from November of 2021 to the present.

97.     Defendants had knowledge that Plaintiff and non-exempt servers were working for the benefit of Defendants during their employment between November of 2021 and the present without being compensated at the minim wage as required by law.

98.     Defendants knowingly and willfully failed to pay Plaintiff and other similarly situated non-exempt servers at least the minimum wage as required by law for all of their actual hours worked for Defendants from November of 2021 to present.

99.     Defendants never paid Plaintiff Tran any wages for about fifty (50) hours of work. Likewise Defendants have failed to pay similar situated servers any wages for all of their actual hours worked for Defendant from November of 2021 to present.

100.    For example, Plaintiff Tran repeatedly complained in writing to MAD notifying her employer that she was not paid any wage for five shifts, of 9-10 hours each.

101.    Defendants did not have a good faith basis for failing to pay at least minimum wage required by law for the actual hours worked by Plaintiff and other non-exempt servers, and thus, Plaintiff and the other similarly situated employees are entitled to recover liquidated damages in an amount equal to their unpaid minimum wages from Defendants pursuant to 29 U.S.C. §216(b).

102.    By failing to pay the Plaintiffs and those similarly situated all of their earned wages at their established wage rates during workweeks between November of 2021 and the present, Defendants violated the FLSA.

103.    Plaintiff Tran and the Collective seek an amount of the sum of any tip credit taken by Defendants and all such tips unlawfully kept by the employer. damages equal to the amount of tips unlawfully kept plus an equal amount as liquidated damages.

104.    Plaintiff retained the undersigned counsel to represent her in this action, and pursuant to 29 U.S.C. §216(b), Plaintiff is entitled to recover from each Defendant all reasonable attorneys' fees and costs incurred as a result of Defendants' violations of the FLSA.

### COUNT II
### FMWA, Fla. Stat. 448.110
### Failure to Pay Wages Owed
### (Plaintiffs against Defendants)

105.    Plaintiff Tran reincorporates the allegations in paragraphs 63-72.

106.    Defendants violated the FMWA by failing to pay Plaintiff Tran and the Collective a wage for all hours worked.

107.    Defendants employed Plaintiff and the Collective as non-exempt "servers" at MAD WYNWOOD within the meaning of 29 U.S.C. § 203(e)(1), as incorporated to the FMWA.

108.    Under Fla. Const. Art. X, § 24(b), MAD was an employer within the meaning of the FMWA because Defendants employed more than two employees affecting interstate commerce during November and December of 2021.  Likewise, MAD had an annual gross revenue in excess of $500,000 in 2021 and 2022.

109.    Defendants willfully violated the FMWA by failing to compensate Plaintiff and all Collective members under the federal minimum wage, because MAD failed to pay Tran Collective members wages for all hours worked during their employment.

110.    During workweeks between November of 2021 and the present, Defendants failed to pay Plaintiff and those similarly situated any wages for some hours worked in certain workweeks.

111.    Plaintiff and the Collective will seek reasonable attorney's fees to be paid by Defendant, and costs of this action.

112.    As a result of Defendants' unlawful conduct, the Plaintiffs and those similarly situated have incurred loss of compensation in an amount to be determined at trial, along with liquidated damages, attorney's fees, and costs of litigation.

113.    By failing to pay the Plaintiffs and those similarly situated all of their earned wages at their established wage rates during workweeks between November of 2021 and the present, Defendants violated the FMWA.

114.    Plaintiff and the other servers are entitled to the minimum wage required under law for every hour worked for Defendants for each week of their respective employment.

115.    Defendants failed to pay Plaintiff and those similarly situated at least the minimum wage—or any wage—for each hour Plaintiffs worked for Defendant.

116. All similarly situated non-exempt servers are likewise entitled to be paid the minimum wage required under law for each hour they worked for Defendant from November of 2021 to the present.

117. Defendants had knowledge that Plaintiff and non-exempt servers were working for the benefit of Defendants during their employment between November of 2021 and the present without being compensated at the minim wage as required by law.

118. Defendants knowingly and willfully failed to pay Plaintiff and other similarly situated non-exempt servers at least the minimum wage as required by law for all of their actual hours worked for Defendants from November of 2021 to present.

119. Defendants never paid Plaintiff Tran any wages for about fifty (50) hours of work. Likewise Defendants have failed to pay similar situated servers any wages for all of their actual hours worked for Defendant from November of 2021 to present.

120. For example, Plaintiff Tran repeatedly complained in writing to Defendants notifying her employer that she was not paid any wage for five shifts, of 9-10 hours each.

121. Defendants did not have a good faith basis for failing to pay at least minimum wage required by law for the actual hours worked by Plaintiff and other non-exempt servers, and thus, Plaintiff and the other similarly situated employees are entitled to recover liquidated damages in an amount equal to their unpaid minimum wages from Defendants pursuant to 29 U.S.C. §216(b), as incorporated in the FMWA.

122. By failing to pay the Plaintiffs and those similarly situated all of their earned wages at their established wage rates during workweeks between November of 2021 and the present, Defendants violated the FMWA.

123.    Plaintiff Tran and the Collective seek an amount of the sum of all unpaid wages for all hours worked plus an equal amount as liquidated damages.

124.    Plaintiff retained the undersigned counsel to represent her in this action, and Plaintiff is entitled to recover from each Defendant all reasonable attorneys' fees and costs incurred as a result of Defendants' violations of the FLSA.

## COUNT III
**FLSA, 29 U.S.C. § 203(m)(2)(B)**
**Unlawful Keeping of Tips**
**(Plaintiffs against Defendants)**

125.    Plaintiff Tran on behalf those similarly situated reincorporates the allegations in paragraphs 26-61.

126.    Plaintiff Tran is expressly permitted to bring this cause of action on behalf of

127.    Defendants violated the FLSA by requiring employees to share tips with managers or supervisors, or MAD as the employer.

128.    Defendants' withholding of tips in whole or in part from Plaintiff and the Collective members results from generally applicable policies and practices of Defendant and does not depend on the personal circumstances of individual Plaintiff Tran or Collective members.

129.    Joey Vega, the owner, told Plaintiff on multiple occasions that Plaintiff Tran was not required to share tip with other servers.

130.    Defendants did not fully distribute any tips it collected on the regular payday for the workweek tips were collected, or the regular payday for the workweek in which the pay period ends.

131.    Defendants violated 29 U.S.C. § 203(m)(2)(B) by keeping tips received by its employees including Tran and other servers, in whole or part, from November of 2021 to present irrespective of whether Defendants takes a tip credit.

132.    Plaintiff Tran and the Collective seek an amount of the sum of any tip credit taken by Defendants and all such tips unlawfully kept by the employer plus damages equal to the amount of tips unlawfully kept as liquidated damages.

133.    Plaintiff and the Collective will seek reasonable attorney's fees to be paid by Defendants, and costs of this action.

**COUNT IV**
**FLSA, 29 U.S.C. § 215(a)(3)**
**Retaliation**
**(Plaintiff Tran against Defendants)**

134.    Plaintiff reincorporates the allegations in paragraphs 33-55.

135.    Defendants violated the FLSA by terminating Plaintiff's employment after and because she complained of unpaid wages and Defendant' failure to maintain accurate pay records.

136.    Plaintiff Tran repeatedly engaged in protected activity by providing fair notice to Defendants, in writing, that Defendants failed to pay Plaintiff Tran a minimum wage, withheld earned tips, and that Defendants' recordkeeping was inaccurate because her hours worked were not tracked.

137.    On or about November 26, 2022, Plaintiff Tran engaged in protected activity by messaging Reyes that she was unpaid minimum wages.  On or about November 26, 2021, Plaintiff further engaged in protected activity by informally complaining to Meruvia that she held a good faith belief that Defendants were inaccurately maintaining records with respect to her working hours and the minimum wage.  Plaintiff engaged in protected activity on or about November 28, 2020, when sent a message to a group chat maintained by Meruvia inquiring whether servers were entitled to 100% of their tips or whether they pooled tips.

138.    Plaintiff Tran suffered an adverse employment action because she complained of unpaid wages.  On or about December 3, 2021, Meruvia terminated Tran's employment on behalf

of Defendants because she asserted she was entitled to unpaid wages.  This is an adverse action because a termination on the heels of an unpaid wages and/or inaccurate recordkeeping complaint would have dissuaded a reasonable employee in Tran's position from making or supporting an FLSA claim.

139.    A causal link exists between Plaintiff's protected activity and the adverse employment action based on temporal proximity and because her complaints and adverse action were not wholly unrelated.  To be sure, Meruvia was aware of Plaintiff Tran's complaints when he terminated Plaintiff's employment on her next shift, five (5) days later.

140.    Meruvia and MAD had actual knowledge of Plaintiff Tran's unpaid wages and inaccurate recordkeeping complaints when Meruvia terminated Plaintiff's employment because Plaintiff complained directly to Meruvia and MAD's payroll department.

141.    Plaintiffs' termination would not have been taken but for asserting her FLSA rights.

142.    These allegations, taken together, give rise to the plausible inference that Defendant terminated Plaintiff Tran's employment because she complained of unpaid wages.

143.    As a result of Defendants' retaliation in violation of 29 U.S.C. § 215(A)(3), Plaintiff has suffered damages.

144.    Plaintiff Tran seeks payment of wages lost as a result of Defendants violation of § 216(b), and an additional amount as liquidated damages.

**COUNT V**
**Fla Stat. § 448.110(5)**
**Retaliation**
**(Plaintiff Tran against Defendants)**

145.     Plaintiff reincorporates the allegations in paragraphs 33-55.

146.     Alternatively, Defendants violated the FMWA by taking an adverse action against Plaintiff in retaliation for exercising rights protected by Article X, Section 24 of the Florida Constitution.

147.     Defendants violated the FMWA by terminating Plaintiff's employment after and because she complained of unpaid wages to multiple supervisors.

148.     Plaintiff Tran repeatedly engaged in protected activity by providing fair notice to Defendants, in writing, that Defendants failed to pay Plaintiff a minimum wage and that Defendants' recordkeeping was inaccurate.  On or about November 26, 2022, Plaintiff Tran engaged in protected activity by messaging Reyes that she was unpaid minimum wages.  On or about November 26, 2021, Plaintiff further engaged in protected activity by informally complaining to Meruvia that she held a good faith belief that Defendants were inaccurately maintaining records with respect to her working hours and the minimum wage.  Plaintiff engaged in protected activity on or about November 28, 2020, when sent a message to a group chat maintained by Meruvia inquiring whether servers were entitled to 100% of their tips or whether they pooled tips.

149.     Plaintiff Tran suffered an adverse employment action because she complained of unpaid wages.  On or about December 3, 2021, Meruvia terminated Tran's employment on behalf of Defendants because she asserted she was entitled to unpaid wages.  This is an adverse action because a termination on the heels of an unpaid wages and/or inaccurate recordkeeping complaint is reasonably likely to deter employees in Tran's position from making an FMWA claim.

150.     A causal link exists between Plaintiff's protected activity and the adverse employment action based on temporal proximity and because her complaints and adverse action were not wholly unrelated.  To be sure, Meruvia was aware of Plaintiff Tran's complaints when he terminated Plaintiff's employment on her next shift seven (7) days.

151.     Meruvia and MAD had actual knowledge of Plaintiff Tran's unpaid wages and inaccurate recordkeeping complaints when Meruvia terminated Plaintiff's employment because Plaintiff complained directly to Meruvia and MAD's payroll department.

152.     Meruvia told Plaintiff that her termination was a decision by the "higherups" or Vega, who was likewise apprised of Plaintiff's complaints.

153.     Plaintiffs' termination would not have been taken but for asserting her FMWA rights.

154.     These allegations, taken together, give rise to the plausible inference that Defendant terminated Plaintiff Tran's employment because she complained of unpaid wages.

155.     As a result of Defendants retaliation in violation of Fla Stat. § 448.110(5), Plaintiff has suffered damages.

156.     Plaintiff seeks lost wages, attorney's fees and costs, and an amount equal to the lost wages as liquidated damages.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff Tran, individually, and behalf of other employees similarly situated, demand judgment against Defendants, respectively, jointly and severally, containing the following relief:

A.      Pursuant to 29 U.S.C. § 216(b), and § 216(c) an award of damages of the payment of wages lost and an additional equal amount as liquidated damages. equal to the amount of all unpaid wages and tips to Plaintiffs;

B.      Pursuant to 29 U.S.C. § 216(b), for violating section 203(m)(2)(B), the sum amount of any tip credit taken by Defendant and all such tips unlawfully kept by Defendant, and an additional equal amount as liquidated damages.

C.      Pursuant to 29 U.S.C. § 2617(a)(1)(A)(iii), an aw ard of liquidated damages for intentionally terminating Plaintiff because she complained of unpaid wages and withheld tips.

D.      Pursuant to 29 U.S.C. § 216(b), an award of costs that Plaintiffs have incurred in this Action, reasonable attorney's fee, and interest to the fullest extent permitted by the FLSA; and

E.      Such other and further relief the Court deems just and proper.

## JURY DEMAND

Plaintiff hereby demands a jury trial of all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Dated: August 25, 2022.                                Respectfully submitted,

                                                      */s/ Brett D. Kaplan*
                                                      Brett Daniel Kaplan, Esq.
                                                      Florida Bar No. 1031866
                                                      E-mail:  brett@bkaplaw.com
                                                      **BRETT D. KAPLAN, P.A.**
                                                      2101 Ludlam Road, #704
                                                      Miami, Florida 33155
                                                      Telephone: (954) 529-8328
                                                      *Counsel for Plaintiff Cynthia Tran and the*
                                                      *Similarly Situated Plaintiffs in the Collective*